UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILFRED RIVERA JR.,<br>    *Plaintiff*,<br><br>v.<br><br>GATESTONE & CO.,<br>    *Defendant*. | No. 3:23-cv-00035-MPS |

**RULING ON DEFENDANT'S MOTION TO STRIKE
OR ALTERNATIVELY MOTION TO DISMISS**

On September 17, 2022, Gatestone & Co. International, Inc. ("Gatestone") sent a letter to Plaintiff Wilfred Rivera, Jr. identifying itself as a debt collector attempting to collect a debt that Rivera allegedly owed to American Express. Following communication between the parties as well as a complaint filed with the Consumer Financial Protection Bureau ("CFPB"), Rivera, proceeding *pro se*, filed this suit against Gatestone. He argues that Gatestone's collection attempt violated various provisions of the Fair Debt Collection Practices Act ("FDCPA") as well as other federal laws and regulations. Gatestone now moves to strike or alternatively dismiss Rivera's Complaint, arguing that the complaint is frivolous and that each of Rivera's allegations fails to state a claim upon which relief may be granted. For the reasons set forth below, I deny Gatestone's motion to strike but grant its motion to dismiss.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are drawn from Rivera's Complaint, ECF No. 1, as well as documents attached to his Complaint, ECF No. 1-1.[1] These facts are accepted as true for the purpose of this motion.

---

[1] "In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996).

1

On September 17, 2022, Gatestone sent a letter to Rivera, identifying itself as a debt collector and explaining that it was "trying to collect a debt that [Plaintiff] owe[s] to American Express." ECF No. 1-1 at 1. Gatestone's letter identifies the defaulted account as an American Express Business Gold Card and provides the last five digits of the account number. *Id.* The letter also states the amount owed as of September 12, 2022. *Id.*

On October 7, Rivera mailed Gatestone requesting validation of his debt. ECF No. 1 at 3. Rivera also sent Gatestone a "Notice of Affidavit of Truth" and a "Notice of Willful Federal Violations Against a Consumer," in which he outlined his belief that Gatestone's collection attempt was in violation of various provisions of the FDCPA as well as several other federal laws. ECF No. 1-1 at 4–7. On October 17, Rivera filed a complaint with the CFPB largely restating his allegations against Gatestone's attempted collection. ECF No. 1-1 at 31–33.

On October 18, Gatestone responded to Rivera's CFPB complaint acknowledging Rivera's allegations and notifying him that Gatestone had "launched a reasonable investigation into the assignment of this American Express account and the allegation of failure to provide validation." ECF No. 1-1 at 36. Gatestone also notified Rivera that it would cease collection of the debt while the investigation was ongoing. *Id.*

On October 28, Gatestone sent a validation of debt letter, ECF No. 1-1 at 43–48, which attached several American Express documents as validation of the debt, including a cardholder agreement, *id.* at 12–28, a privacy statement, *id.* at 9–11, 29, Rivera's card application information form, *id.* at 30, and copies of card statements from July to October 2022, *id.* at 51–70. The letter further stated that, following the internal investigation, "it is Gatestone's position that no improper action was taken regarding debt collection" and that the "collection effort has **not** been terminated." *Id.* at 48 (emphasis in original).

Rivera filed an update to his original CFPB complaint on November 22, reiterating that Gatestone had not adequately provided validation for the debt, among other complaints. *Id.* at 38–39. Gatestone responded to Rivera's allegations and resent copies of the validating documents, *id.* at 39–41, and the CFPB complaint was subsequently closed, *id.* at 42.

Rivera, proceeding *pro se*, filed this lawsuit on January 9, 2023, alleging violations of numerous provisions of the FDCPA as well as several other federal statutes, including the Gramm-Leach-Bliley Act ("GLBA"), the Truth in Lending Act ("TILA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Federal Debt Collection Procedures Act of 1990, and Title 18 U.S.C. § 8. ECF No. 1 at 3–6.

On February 13, Gatestone moved for an extension of time to file its responsive pleading, ECF No. 11, but on February 17, Gatestone filed the pending Motion to Strike or Alternatively Motion to Dismiss, ECF No. 12. Gatestone also filed a Notice to Self-Represented Litigant Concerning Motions to Dismiss as required by Local Rule 12(a). ECF No. 13. In support of its motion to strike, Gatestone argues that Rivera's Complaint is "so permeated with conspiracy theory and frivolous legalese that it is impossible to determine whether any part or portion of it states a plausible claim for relief." ECF No. 12-1 at 5. In support of its motion to dismiss, Gatestone argues that Rivera fails to state a claim upon which relief can be granted because "Plaintiff's arguments are not grounded in law, and they are contradicted by the very documents he attached to his Complaint." *Id.* at 1.

On February 21, Rivera filed a response in opposition to the pending motion. ECF No. 14. Gatestone filed a reply in support of its motion on February 22. ECF No. 15. Rivera

3

subsequently filed two substantially identical documents, ECF Nos. 18, 19, which are styled as responses to the pending motion and which I will interpret as a surresponse.[2]

Finally, on April 24, Rivera filed a motion seeking to compel Gatestone to provide the Court with the "Forward Flow Agreement," which purportedly documented the transfer of Rivera's account from American Express to Gatestone.  ECF No. 20 at 1.

I have reviewed each of these filings, and the pending motions are now ripe for adjudication.

## II.   LEGAL STANDARD

### A.   Rule 12(f)

Federal Rule of Civil Procedure 12(f) gives district courts the power to strike "any redundant, immaterial, impertinent, or scandalous matter" from pleadings.  To prevail on a motion to strike, the movant must bear the "heavy burden" of demonstrating that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013).  In this district, "motions to strike are generally disfavored." *U.S. Sec. & Exch. Comm'n v. Ahmed*, 2020 WL 7321401, at *2 (D. Conn. Dec. 11, 2020) (collecting cases).

### B.   Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

---

[2] Although surresponses are not granted as a matter of right, I will nevertheless consider these filings given Rivera's *pro se* status.  *See, e.g.*, *Marczeski v. Law*, 122 F. Supp. 2d 315, 318 n.2 (D. Conn. 2000) ("Were the plaintiff not *pro se*, the Court would have stricken all filings after the reply brief.  However, . . .given the latitude that must be afforded *pro se* litigants, the Court has allowed these filings.").

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks and citations omitted).

### III.  DISCUSSION

I will consider Gatestone's motion to strike under Rule 12(f) before turning to its motion to dismiss under Rule 12(b)(6).

#### A.  Motion to Strike Under Rule 12(f)

Gatestone argues that I should strike Rivera's Complaint in its entirety because it is "so permeated with conspiracy theory and frivolous legalese that it is impossible to determine whether any part or portion of it states a plausible claim for relief." ECF No. 12-1 at 5. Specifically, Gatestone argues that the "sovereign citizen" theory—that is, the theory that "state and federal governments lack constitutional legitimacy and therefore have no authority to regulate [plaintiffs'] behavior"—is "fundamental to Plaintiff's Complaint such that it cannot be

severed from other allegations." *Id.* at 2–4. As a result, Gatestone argues, the Complaint as a whole should be stricken. *Id.* at 4–5.

I disagree that sovereign citizen theories so fundamentally undergird Rivera's allegations such that his Complaint should be stricken in its entirety. Even if Rivera's allegation that "there is no real MONEY in circulation and **ALL DEBT IS** [the] **OBLIGATION OF THE UNITED STATES**," ECF No. 1 at 4 (emphasis in original), is frivolous, *see* Section III.B.A *infra* (discussing such theories more fully), his claims for relief are not wholly dependent on this allegation. For example, Gatestone does not explain how this allegation relates to Rivera's claim that Gatestone failed to adequately validate his debt under 15 U.S.C. § 1692g. *See id.* at 3. Thus, I decline to strike the Complaint in its entirety.

In the alternative, Gatestone suggests that instead of striking the Complaint as a whole, I should "strike all claims based upon 'sovereign citizen' theories." ECF No. 12-1 at 5. But striking even "a portion of a pleading is a drastic remedy." *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11-cv-6805, 2013 WL 5179197, at *2 (S.D.N.Y. Sept. 16, 2013) (internal quotations omitted). In this district, "motions to strike are generally disfavored," *Ahmed*, 2020 WL 7321401, at *2 (collecting cases), and as such are "infrequently granted," *Trade Links, LLC v. BI-QEM SA de CV*, 3:19-cv-00308, 2020 WL 1335688, at *15 (D. Conn. Mar. 23, 2020) (internal quotation omitted). For these reasons, I decline to strike any portion of Rivera's Complaint.

    **B.**    **Motion to Dismiss Under Rule 12(b)(6)**

Gatestone moves, in the alternative, to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). To survive a motion to dismiss, each of Rivera's causes of action must be supported by "sufficient factual matter, accepted as true, to 'state a claim for relief that is

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Rivera alleges violations of numerous provisions of the FDCPA as well as several other federal statutes. *See* ECF No. 1 at 3–5.  I will consider each alleged cause of action in turn.

   1. **Fair Debt Collection Practices Act**

Rivera alleges that Gatestone has violated several provisions of the FDCPA, including: (1) engaging in prohibited communications concerning his debt under 15 U.S.C. § 1692b, (2) using "obscene" language in collection attempts under § 1692d, (3) making misleading statements under § 1692e, (4) not providing sufficient validation of his debt under § 1692g, and (5) furnishing deceptive forms under § 1692j.  *See id.*

Before assessing the sufficiency of these allegations, however, I must first determine that the debt in question is at least plausibly covered by the FDCPA.  The FDCPA governs the collection of consumer, not commercial, debts.  A "debt" under the FDCPA "means any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*." 15 U.S.C. § 1692a(5) (emphasis added).  Thus, FDCPA actions must concern the "obligation[s] of a consumer," while "actions arising out of commercial debts" are not governed by the FDCPA.  *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006).

Rivera has failed to plead sufficient facts to demonstrate that the FDCPA plausibly covers the attempted debt collection here.  At no point in his Complaint or the attached exhibits does Rivera specify that the debt here is a consumer debt.  In fact, the exhibits attached to the Complaint make clear that the credit card affiliated with the account at issue is a "Business Gold Card."  *See* ECF No. 1-1 at 1, 46–48, 51–70.  Moreover, the exhibits show that Rivera created

the credit card account under the business name "Goody Goodiez Ent." *Id.* at 45–48, 51–70. Together, these facts indicate that Rivera has not plausibly alleged that the debt in question is a consumer debt, and thus, he has not done enough to show that Gatestone's attempted debt collection action is covered by the FDCPA. Because Rivera has failed to surmount this initial and essential hurdle, his FDCPA claims must be dismissed.

### 2. Gramm-Leach-Bliley Act

Rivera alleges that Gatestone also violated provisions of the GLBA. *See* ECF No. 1 at 3–4. Specifically, he alleges that Gatestone violated 15 U.S.C. § 6801 and § 6803(d)(1)(C), each of which involves the safeguarding of consumers' nonpublic financial information.

While the GLBA does require "financial institutions" to "establish appropriate standards" to protect consumer's financial information, 15 U.S.C. § 6801, the act does not create a private right of action. The act's enforcement provision states that the act "shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction." § 6805(a). Private citizens are not listed among authorized enforcers of the act. Indeed, "[e]very case to have addressed the issue has held that the GLBA does not provide for a private right of action." *Farley v. Williams*, No. 02-cv-0667C, 2005 WL 3579060, at *3 (W.D.N.Y. Dec. 30, 2005) (collecting cases). Because Rivera does not have a right to bring claims under the GLBA, these claims must be dismissed.

### 3. Truth in Lending Act ("TILA")

Next, Rivera alleges that Gatestone violated several provisions of TILA, including 15 U.S.C. §§ 1605, 1611, 1640, 1644, and 18 U.S.C. § 892. *See* ECF No. 1 at 3–5; ECF No. 1-1 at

6, 38. Although Rivera's allegations under TILA are difficult to parse, he appears to allege that Gatestone's collection attempts are fraudulent or unfair under the act. *See* ECF No. 1 at 3.

But Gatestone is not subject to TILA's requirements "[b]ecause TILA only regulates creditors." *Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 296 (D. Conn. 2015). In cases of "an open-end credit plan involving a credit card," such as this one, TILA defines a "creditor" as "the card issuer and any person who honors the credit card and offers a discount which is a finance charge." 15 U.S.C. § 1602(g). Under this definition, Gatestone is not a creditor. As Rivera himself admits, Gatestone is a debt collector, and "courts have repeatedly concluded that a debt collector is not a 'creditor' subject to the requirements of the TILA." *Medrano v. Great Mercantile Agency, Inc.*, No. 1:17-cv-1392, 2019 WL 2164634, at *4 (E.D. Cal. May. 17, 2019) (collecting cases) *findings and recommendations adopted by* 2019 WL 3366108, (E.D. Cal. June 17, 2019).

Moreover, many of the subsections of TILA that Rivera alleges Gatestone violated are criminal statutes. 15 U.S.C. §§ 1611, 1644, and 18 U.S.C. § 892 each lays out criminal liability under the act. Because "a private party . . . may not enforce criminal statutes." *McQuay v. Pelkey*, No. 3:16-cv-436, 2017 WL 2174403, at *3 (D. Conn. May. 17, 2017), Rivera cannot bring such claims against Gatestone.

For these reasons, Rivera's TILA claims must also be dismissed.

### 4. Racketeer Influenced and Corrupt Organizations Act ("RICO")

Rivera makes a passing claim that Gatestone has committed racketeering in violation of RICO under 18 U.S.C. § 1962. To plead a RICO claim, a plaintiff must plausibly allege facts showing that "the defendant by means of the commission of two or more acts that constitute a pattern of racketeering activity has participated in an enterprise affecting interstate or foreign

9

commerce." *Rubenstein v. Nat'l Ass'n of Realtors*, No. 3:20-cv-00742, 2021 WL 3146249, at *3 (D. Conn. Jul. 26, 2021).

Rivera's allegations are especially scant on this claim. He does not specify the underlying predicate acts, whether those acts constitute a pattern of racketeering activity, which parties constitute the enterprise, or how the alleged activity affects interstate commerce. Although courts in this circuit read *pro se* submissions liberally, "we do not create arguments out of whole cloth." *U.S. v. Bethea*, 388 F. App'x 20, 21 (2d Cir. 2010). Indeed, liberal construction "cannot save *pro se* litigants who do not present cognizable arguments," *Collins v. Blumenthal,* 581 F. Supp. 2d 289, 291 (D.Conn. 2008), and courts "need not engage in rank speculations to manufacture a federal claim for *pro se* plaintiffs." *Gonzalez v. Option One Mortg. Corp.*, No. 3:12-cv-1470 CSH, 2014 WL 2475893, at *5 (D. Conn. June 3, 2014) (internal quotations omitted). Because Rivera's RICO claim is supported by nothing more than conclusory allegations, this claim must also be dismissed.

### 5. 18 U.S.C. § 8 and 28 U.S.C. § 3002(1)(B)

Finally, Rivera appears to allege that Gatestone has no right to collect the debt because, according to him, the United States government took on all debt obligations following the country's move away from the gold standard. In support of this theory, Rivera cites 18 U.S.C. § 8, 28 U.S.C. § 3002(1)(B), and the House Joint Resolution 192 of 1933. 18 U.S.C. § 8 sets forth the definition of the term "obligation or other security of the United States." 28 U.S.C. § 3002(1)(B), which is part of the Federal Debt Collection Procedures Act (not to be confused with the Fair Debt Collection Practices Act), defines the term "Counsel for the United States." The House Joint Resolution 192 of 1933 "was adopted by Congress to prohibit contracts that demand payment in gold" following the abandonment of the gold standard. *Sykes v. Shields*, No. 3:03-

cv-2268 S, 2004 WL 1638237, at *2 (D. Conn. July 13, 2004).  Rivera, stringing these laws together, asserts that "there is no real MONEY in circulation and **ALL DEBT IS** [the] **OBLIGATION OF THE UNITED STATES**."  ECF No. 1 at 4 (emphasis in original).  Because, in Rivera's view, all debt is the obligation of the United States, Gatestone did not have the authority to collect the debt in question here.

These claims are legally and factually meritless.  Such claims, which are sometimes referred to as the "vapor money," "unlawful money," or "redemption" theories of debt, have been uniformly rejected by the courts.  *See, e.g.*, *Osorio v. Connecticut*, No. 3:17-cv-1210, 2018 WL 1440178, at *5 (D. Conn. Mar. 22, 2018) (calling such theories "indisputably meritless" and dismissing them as frivolous); *Greene v. Pryce*, No. 15-cv-3527, 2015 WL 4987893, at *3 (E.D.N.Y. Aug. 18, 2015) ("Theories presented by redemptionists have been rejected by the courts as frivolous arguments."); *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 214 (D. Conn. 2010) ("[T]hese theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years.").  Accordingly, I dismiss these claims.

### IV. CONCLUSION

For the reasons above, I deny Gatestone's motion to strike but grant its motion to dismiss, ECF No. 12.  Gatestone's motion for extension of time, ECF No. 11, and Rivera's motion to compel, ECF No. 20, are denied as moot.  This case is dismissed without prejudice to filing an amended complaint within 30 days of the issuance of this order that addresses the deficiencies identified herein.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
August 28, 2023