## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILFRED RIVERA JR.,<br><br>    *Plaintiff*,<br><br>vs.<br><br>GATESTONE & CO. and AMERICAN EXPRESS CO.,<br><br>    *Defendants*. | No. 3:23-cv-00035-MPS |

## <u>RULING ON MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Wilfred Rivera brings this *pro se* action against Defendant Gatestone & Co. ("Gatestone") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Rivera alleges that Gatestone, a debt collector, violated various provisions of the FDCPA[1] by fraudulently, coercively, and without authority, attempting to collect debts associated with three of his American Express accounts. Gatestone seeks summary judgment on Rivera's claims. For the reasons that follow, the Court GRANTS its motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

I begin with the parties' compliance, and lack of compliance, with Local Rule 56, which governs summary judgment practice in this Court.

---

[1] Rivera seeks to bring claims under other sources of federal law. These laws, however, provide no private cause of action, either because they belong to the criminal code, *see* ECF No. 81 at 12 (alleging that Gatestone engaged in "Extortion under [Title] 18"), or because they merely serve to define the rights or defenses of a party and are not independently actionable. *See, e.g.*, *id.* at 17 (invoking 16 C.F.R. § 433.2, which requires consumer credit contracts to contain specific language preserving a debtor's "claims and defenses"). Rivera also repeatedly cites the Uniform Commercial Code ("UCC"), *see, e.g.*, *id.* at 17 ("[M]ay the Court recognize that even before the BILL OF SALE and PURCHASE AGREEMENT per UCC3-203, UCC3-302 no Debt collector is ever a holder in due course having a right to demand performance on account."). Similarly, violations of the UCC cannot serve as the basis for a private lawsuit, as the UCC is a "model code"—a set of provisions proposed by academics and legal professionals—and not a source of law.

In his opposition to the motion for summary judgment, ECF No. 49, Rivera neglects to include a corresponding Local Rule 56(a)2 Statement. *See* L. Civ. R. 56(a)(2)(i) ("A party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled 'Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment,' which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c).").

Local Rule 56 required Gatestone to warn Rivera, a self-represented litigant, of the need to file such a statement and the other requirements of summary judgment practice. Specifically, Local Rule 56 requires "[a]ny represented party moving for summary judgment against a self-represented party [to] file and serve, as a separate document . . . a 'Notice to Self-Represented Litigant Concerning Motion for Summary Judgment.'" L. Civ. R. 56(b). The rule also requires the movant to "attach to the notice copies of the full text of Rule 56 of the Federal Rules of Civil Procedure and of th[e] Local Civil Rule 56." *Id.* Gatestone filed the "Notice to Self-Represented Litigant" but failed to file a copy of Local Rule 56. *See* ECF No. 47. Instead, it appears to have erroneously filed two copies of the federal rule. *See* ECF No. 47-1; ECF No. 47-2. In light of Rivera's failure to file a Local Rule 56(a)2 Statement, the Court must determine whether Rivera "understood the nature and consequences of summary judgment," such that Gatestone's failure to provide him with a copy of the rule was harmless error. *Gilani v. Teneo, Inc.*, No. 22-169, 2022 WL 17817895, at *2 (2d Cir. Dec. 20, 2022) (summary order).

While a defendant's failure to provide the requisite notice under Local Rule 56(b) is "ordinarily a ground for remand" on appeal, "when a *pro se* litigant has demonstrated 'a clear

understanding of the nature and consequences of a summary judgment motion and the need to set forth all available evidence demonstrating a genuine dispute over material facts, failure to provide proper notice will be deemed harmless.'" *Id.* (quoting *Jova v. Smith*, 582 F.3d 410, 414 (2d Cir. 2009)). Notwithstanding Gatestone's failure to provide a complete copy of Local Rule 56, the "Notice to Self-Represented Litigant" provided to Rivera states that he "must file evidence, such as one or more affidavits disputing the movant's version of the facts." ECF No. 47 at 2. That notice further states that Rivera "may also file deposition transcripts, responses to discovery requests, and other evidence to support [his] claims." *Id.* Finally, the notice states that if Rivera "fails to comply with these instructions and [fails] to submit evidence contradicting the movant's version of the facts, judgment may be entered against [him] if the motion shows that the movant is entitled to judgment as a matter of law." *Id.*

Further, Rivera's experience in other cases in this Court shows that he was well aware of summary judgment rules, including the requirements of Local Rule 56. On January 19, 2024—well before the September 10, 2024 summary judgment response deadline in this case—Rivera filed his opposition to a motion for summary judgment in another case he has filed. *See Rivera v. Zwicker & Associates, P.C.*, No. 3:23-cv-00116 (MPS), ECF No. 44. That opposition contained a "Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment," *id.* at 5-6, which, as required by Local Rule 56, included "a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact . . . ." L. Civ. R. 56(a)(2)(i). It also included a separate section entitled "Additional Material Facts," ECF No. 44 at 16; *see also* L. Civ. R. 56(a)(2)(ii) ("The Local Rule

56(a)2 Statement must also include a separate section entitled 'Additional Material Facts' . . . ."),

as well as attached exhibits. ECF No. 44 at 17-36.

Though Rivera was on notice of the requirements of the local rule, including that he

submit a Local Rule 56(a)2 Statement, that he submit and specifically cite evidence disputing

Gatestone's facts, and that a failure to do so could result in summary judgment being granted in

Gatestone's favor, he has simply filed an opposition brief that fails to cite specific evidence and

only makes a vague reference to "exhibits." *See* ECF No. 49 at 1 ("May the court recognize

GATESTONE has . . . lied to the court and alleged it in fact validated the debt but as shown in

Exhibits provided to defendant and the court, GATESTONE['s] very own client AMERICAN

EXPRESS cannot validate the debts.").

Given the notice Rivera received in this case and his past substantial compliance with

Local Rule 56 elsewhere, the Court cannot say that Gatestone's failure to include a full copy of

the local rule has prejudiced Rivera. And by filing the requisite notice and a copy of Federal Rule

56, Gatestone has substantially complied with the local rule. *See Ramirez v. Allen*, No. 3:17-cv-

1335 (MPS), 2018 WL 5281738, at *4 n.2 (D. Conn. Oct. 24, 2018) ("The notice itself complied

with this Court's Local Rule 56(b) and, as required, attached a copy of Rule 56 of the Federal

Rules. It did not, however, attach a copy of this Court's Local Rule 56, which that rule also

requires. Nonetheless, the Court finds that the Defendants' substantial compliance with the notice

to self-represented litigants required by Local Rule 56(b) was adequate in this case, because the

notice provided explained, in plain English, that the self-represented plaintiff had to respond by

filing 'his own [evidence] contradicting his opponent's if he wants to preserve factual issues for

trial.'") (internal citations omitted). The Court therefore treats as admitted the properly

4

supported—and uncontested—factual statements in Gatestone's Local Rule 56(a)1 Statement, which are set forth below. *See also* L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."); *id.* 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1 . . . .").

### A. Facts

"Gatestone is a debt collector and attempted to collect from [Rivera] three American Express debts" associated with three separate accounts ending in numbers "61000, 32009, and 81002." *Id.* ¶ 1. "[Rivera] requested that Gatestone validate the debt owed under each account." *Id.* ¶ 2. "Gatestone sent [Rivera] three validation letters (one each for the [three] American Express accounts . . . )." *Id.* ¶ 3. These letters stated, in part, "We are writing in response to a debt validation request we received concerning the American Express account referenced above. As requested, we are sending copies of statements and any other relevant documentation to serve as validation of debt." *Id.*

### B. Procedural Background

This case was filed over three years ago. *See* ECF No. 1. Since that time, the Court has granted Rivera leave to amend his complaint on three occasions. *See* ECF Nos. 25, 60, 81. Following the completion of discovery, Gatestone moved for summary judgment, ECF No. 45, and Rivera filed his second amended complaint, joining American Express. ECF No. 60. In light

of the second amended complaint, the Court denied as moot Gatestone's motion for summary judgment and allowed Gatestone to file a new motion. ECF No. 62. Gatestone did so, incorporating by reference its previous summary judgment arguments. ECF No. 67; ECF No. 67-1 at 5 ("Gatestone adopts by reference the legal arguments and statements in its previously filed Motion for Summary Judgment, Statement of Material Fact[,] Memorandum of Law and Reply Memorandum.") (internal citations omitted).

American Express subsequently appeared and filed a motion to dismiss. ECF No. 68. Because it is my practice to allow a plaintiff—especially a *pro se* plaintiff—to amend his or her complaint following a defendant's first motion to dismiss under Rule 12, the Court gave Rivera the opportunity to "plead additional facts to support [his] complaint" in light of American Express's motion. ECF No. 80. Rivera availed himself of that opportunity, filing his third amended complaint—the operative complaint. ECF No. 81. Rather than deny Gatestone's second motion for summary judgment in light of the amended complaint, the Court allowed Gatestone, "if it f[ound] it necessary," to file a supplement to its summary judgment motion "addressing any new claims or arguments arising from the new complaint" and to file a statement on the docket indicating if it "believes it needs further discovery." ECF No. 83. In response to this order, Gatestone advised the Court that it "does not require further discovery," and requested "that the Court rule on Gatestone's fully briefed Motion for Summary Judgment." ECF No. 86.

## II.    LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks omitted). In reviewing the summary

judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (internal quotation marks omitted).

## III.    DISCUSSION

The operative complaint is vague as to the precise FDCPA claims it seeks to bring. *See, e.g.*, ECF No. 81 at 13 ("This misconduct by AMERICAN EXPRESS has caused GATESTONE to commit severe violations under the FDCPA . . . A Debt Collector cannot lawfully attempt to keep an obligation performing that has already been closed and written-off for a tax-benefit via coercion of 'money' against a consumer without triggering the FDCPA."). This is in stark contrast to the first amended complaint, which expressly cited the particular FDCPA provisions under which Rivera sought to bring his claims. *See* ECF No. 25 at 5 (bringing claims under 15 U.S.C. §§ 1692a, 1692b(2), 1692c(a), 1692c(b), 1692(d)(2), 1692e, 1692e(2)(A), 1692e(10), 1692e(11), 1692e(12), 1692e(14), 1692e(16), 1692f(1), 1692g, and 1692j).

Rivera seems to believe that the first amended complaint—and its claims—remain intact; his operative complaint appears to reference the first amended complaint—referring to it as "the Gatestone complaint." *See* ECF No. 81 at 13 ("As allotted in the GATESTONE complaint in this case, GATESTONE has committed collection activities under false, deceptive and misleading pretenses . . . . "). Similarly, Gatestone appears to believe that the first amended complaint is the only complaint that applies to it. Gatestone's second motion for summary judgment expressly addresses this complaint and its claims, *see* ECF No. 67-1 at 1-2, notwithstanding the fact that, at the time Gatestone filed the motion, the first amended complaint was no longer operative. *See* ECF No. 60 (Rivera's second amended complaint). In declining to supplement its motion in light of the operative complaint, Gatestone takes the position that the operative complaint "seeks no relief against Gatestone . . . ." ECF No. 86 at 1.

"It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Usually, this would mean that the Court need not address the first amended complaint's claims in adjudicating Gatestone's summary judgment motion; only the claims in the operative complaint would define the scope of the case. Nevertheless, the Court is mindful that Rivera—a *pro se* litigant who is entitled to "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010)— may not have been aware of the superseding effect an amended complaint has on his previous claims and will therefore consider these claims in addressing Gatestone's summary judgment motion. This will not prejudice Gatestone, which, as discussed, has expressly addressed the first amended complaint, and, indeed, appears to believe that this complaint is the only complaint it is obligated to address. Finally, the Court notes that, as best as it can discern, the claims pled in the

operative complaint were likewise pled in the first amended complaint.[2] Accordingly, Gatestone's motion—though it expressly addresses the claims in the first amended complaint—is also responsive to the claims in the operative complaint.

Rivera brings claims under the following provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*: 1) § 1692a; 2) § 1692b(2); 3) §§ 1692c(a) and 1692c(b); 4) § 1692d(2); 5) §§ 1692e(2)(A), 1692e(10), 1692e(11), 1692e(12), 1692e(14), and 1692e(16); 6) § 1692f(1); 7) § 1692g; and 8) § 1692j. The Court addresses each in turn.

### A. 15 U.S.C. § 1692a

Section 1692a is the definitions section of the FDCPA. It defines "location information" as "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7). Rivera alleges that Gatestone has violated Section 1692a(7) by obtaining his location information without his consent.[3] *See* ECF No. 25 at 2 ("Notice it is a fact GATESTONE & CO. is in FEDERAL violation under [Title] 15 USC 1692a for violating my federally protected RIGHT TO PRIVACY by obtaining my non - public identifying information without permissible purpose and consent."); *id.* at 4 ("I have no contract with GATESTONE nor have I ever given GATESTONE my private identifying information as described in 15 USC 1692a

---

[2] The Court construes the operative complaint as bringing claims under 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g.

[3] Rivera also alleges that this violated his right to privacy under the Privacy Act of 1974. *See* ECF No. 25 at 2 ("Because I have a right to privacy under 'THE PRIVACY ACT OF 1974' and that is why consumer reporting agencies by definition and financial institutions by definition have to assure and maintain respect in regards to a consumer[']s right to privacy."). A private right of action under the Privacy Act, however, is "specifically limited to actions against agencies of the United States government." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (citing 5 U.S.C. § 552a(g)(1) (stating that "the individual may bring a civil action against the agency")).

(7) to have an account furnished in their data base in my name for the purpose of to communicate at my place of living.").

Gatestone does not address this claim. Nevertheless, the claim is facially defective as a matter of law. Courts in this Circuit have routinely held that a party cannot invoke a statutory definition as the basis for a claim. *See, e.g.*, *Richter v. Design at Work, LLC*, No. 14-cv-650, 2014 WL 3014972, at *4 (E.D.N.Y. July 3, 2014) ("Richter also purports to bring this action under 26 U.S.C. § 62, a provision of the Internal Revenue Code that defines 'adjusted gross income' . . . Section 62 is definitional; it does not create a private right of action . . . ."); *United States v. Richard Dattner Architects*, 972 F. Supp. 738, 743–44 (S.D.N.Y. 1997) ("A section that merely defines should not be relied upon to show that Congress intended to create a private right of action to enforce what is included in or excluded from the definition."). Because no set of facts could sustain a claim under Section 1692a and therefore no genuine dispute of material fact exists, the Court grants summary judgment in Gatestone's favor as to this claim. *See Project Release v. Prevost*, 722 F.2d 960, 969 (2d Cir. 1983) ("A court may grant summary judgment *sua sponte* when it is clear that a case does not present an issue of material fact.").

**B.  15 U.S.C. § 1692b**

Rivera alleges that Gatestone "is in a violation under 15 USC 1692b(2) . . . ." ECF No. 25 at 2. Section 1692b(2) states that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt." 15 U.S.C. § 1692b(2) Gatestone points out that the statute expressly allows for such communications with the consumer and is therefore "inapplicable in the context of a debt collector (Gatestone) sending a collection letter(s) to a consumer (plaintiff)."

ECF No. 45-1 at 8. Gatestone appears to misunderstand the factual basis of Rivera's claim. Rivera is not arguing that Gatestone violated this provision because it communicated with him. Instead, Rivera alleges that Gatestone violated Section 1692b(2) because it "would have had to communicate with AMERICAN EXPRESS in regards to a debt to buy the account and attempt to collect repayment . . . ." ECF No. 25 at 2.

Courts in this Circuit have held that Section 1692b does not provide "a separate right of action." *Ross v. Cavalry Portfolio Servs., LLC*, 701 F. Supp. 3d 211, 224 (E.D.N.Y. 2023), *aff'd*, No. 23-7861, 2024 WL 4404043 (2d Cir. Oct. 4, 2024). Rather, these courts have interpreted Section 1692b as an exception to Section 1692c's general bar against third-party communications, insofar as Section 1692b allows for such communications when made "for the purpose of acquiring location information about the consumer." *See* 15 U.S.C. § 1692b; *id.* §1692c(b) ("*Except as provided in Section 1692b of this title*, without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.") (emphasis added). Accordingly, a claim arising from a violation of Section 1692b is, in substance, a claim of an improper third-party communication and should be brought under Section 1692c. *Morant v. Miracle Fin., Inc.*, No. 11-cv-4140, 2012 WL 4174893, at *3 (E.D.N.Y. Sept. 17, 2012) ("Noncompliance with § 1692b is thus a violation § 1692c(b), and not an independent violation of the Act.").

Whether brought under Section 1692b or 1692c, Rivera's claim fails for several reasons. First, the FDCPA expressly permits a debt collector to communicate with "the creditor" or "the

attorney of the creditor" "in connection with the collection of any debt." 15 U.S.C. § 1692c(b).

Rivera's position makes little sense in this context. It would be incongruous for the FDCPA to

broadly allow for communications between a debt collector and a creditor but then prevent the

debt collector from discussing the debt with the creditor in the narrow circumstances of a

communication concerning the debtor's location information. The Court will not, and cannot,

embrace an interpretation of a statute that would undermine the coherence of the statutory scheme.

*See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A

court must therefore interpret the statute as a symmetrical and coherent regulatory scheme and fit,

if possible, all parts into an harmonious whole.") (internal quotations and citations omitted). The

FDCPA's bar on communication with third parties is aimed at preventing the unwarranted public

disclosure of private debts. There is no such danger in the context of a debt collector's outreach to

a creditor; both parties are already aware of the debt.

Second, assuming that the statute functions as Rivera contends, Gatestone is nevertheless

entitled to summary judgment because Rivera has failed to raise a genuine dispute of material fact.

Rivera, as the non-moving party, is entitled to have all reasonable inferences drawn in his favor.

And it is reasonable to infer that any communication between Gatestone and American Express

concerning Rivera would involve a discussion of his debts. Section 1692b(2) would only bar such

a communication, however, if it was made "for the purpose of acquiring" Rivera's "location

information." Rivera adduces no evidence as to the content of the communication between

Gatestone and American Express—much less evidence that suggests that the purpose of this

communication was to acquire Rivera's location information.

For the reasons stated above, Gatestone is entitled to summary judgment as to Rivera's Section 1692b claim.

### C.  15 U.S.C. § 1692c

As previously discussed, Section 1692c places limitations on a debt collector's communications. Section 1692c(a), for instance, prohibits a debt collector from communicating with the consumer under particular circumstances without the consumer's "prior consent" or "the express permission of a court of competent jurisdiction." *See* 15 U.S.C. § 1692c(a)(1) - (3). Rivera alleges that Gatestone violated Section 1692c(a) because it communicated with him without his consent or a court order. *See* ECF No. 25 at 4 ("Notice it is a fact GATESTONE & CO are in violation under 15 USC 1692c (a) . . . Where is the court order or consent from me to GATESTONE to communicate with me on these 3 consumer account debt?"). Rivera also alleges that Gatestone violated Section 1692c(b)'s bar on third-party communications because it communicated with the "principal obligor, WILFRED RIVERA JR," and not himself "the agent, natural person and consumer in fact." *Id.*; *see also id.* at 8 ("I agent, Wilfred-Jr:Rivera am here on behalf of principle[*sic*] WILFRED RIVERA JR . . . ."). Gatestone argues that "Sections 1692c(a) and (b) are inapplicable under the facts of this case." ECF No. 45-1 at 8. The Court agrees.

As Gatestone points out, Section 1692c(a) does not bar *all* communications between the debt collector and the consumer that are unconsented to or that lack the express permission of a court. Instead, the provision bars "communication with a consumer at an inconvenient place or time which the debt collector should know to be inconvenient; with a consumer if it is known that the consumer is represented by an attorney; and at a consumer's place of employment." *Id.*; *see also* 15 U.S.C. § 1692c(a)(1) (barring communications with a consumer "without the prior consent

of the consumer" or "the express permission of a court of competent jurisdiction . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer"); *id.* § 1692c(a)(2) (barring such communications "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address"); *id.* § 1692c(a)(3) (barring such communications "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication"). The record contains no evidence suggesting that Gatestone's communications with Rivera occurred under any of these circumstances. Gatestone is therefore entitled to summary judgment as to any claims Rivera seeks to bring under Section 1692c(a).

As to Rivera's claim under 1692c(b), it is beyond dispute that Gatestone's communications were directed toward Rivera, the consumer, and are therefore exempt from Section 1692c(b)'s prohibition on third-party communications. *See* 15 U.S.C. § 1692(c)(b) ("[W]ithout the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction . . . a debt collector may not communicate, in connection with the collection of any, with any person other than *the consumer*, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.") (emphasis added); "ECF No. 46 ¶ 1 ("Gatestone is a debt collector and attempted to collect from Plaintiff three American Express debts . . . ."); *id.* ¶ 3 ("On November 7, 2022, Gatestone sent plaintiff three validation letters . . . ."); ECF No. 25 at 9-11 (debt validation letters from Gatestone to "Wilfred Rivera").

14

Rivera cannot manufacture a violation of this provision out of whole cloth by claiming he is two separate entities and alleging that Gatestone improperly contacted Rivera, the principal, rather than Rivera, the agent. There is no evidence in the record suggesting that the recipients of Gatestone's communications extended beyond Rivera, the consumer, and American Express, the creditor. Because these communications are expressly permitted by the FDCPA, Gatestone is entitled to summary judgment as to the Section 1692c(b) claim.

### D.  15 U.S.C. § 1692d

Section 1692d prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. It also includes a non-exhaustive list of conduct constituting a violation of the provision, including "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader." 15 U.S.C. § 1692d(2). Rivera alleges that, "because there is no lawful debt in the matter," Gatestone's use of the following language is obscene, profane, and abusive: "We are trying to collect a debt you owe to AMERICAN EXPRESS. We will use any information you give to collect a debt." ECF No. 25 at 4. In response, Gatestone argues that the "sending of a collection letter(s) to collect debts and then sending the requested validation is not illustrative of the use of obscene or profane language." ECF No. 45-1 at 8.

As the Court has made clear in Rivera's other litigation, the complained-of language is not obscene, profane, or abusive. *See Rivera v. NCB Mgmt. Servs., Inc.*, No. 3:23-cv-00221 (MPS), 2023 WL 7553051, at *4 (D. Conn. Nov. 14, 2023) (Ruling on Motion to Dismiss) (holding that the language: "'We are trying to collect a debt you owe to BANK OF AMERICA. We will use

any information you give us to collect the debt' . . . does not qualify as profane or obscene"). Moreover, and contrary to Rivera's position, the alleged absence of a "lawful debt" does not render statements made in an effort to collect that debt obscene or profane. Instead, courts have interpreted "obscene or profane language" under Section 1692d(2) consistent with the terms' plain meaning— that is, "offensive language" such as name-calling, racial or ethnic slurs, and other similarly offensive derogatory remarks. *Monahan v. NRA Grp. L.L.C.*, No. 3:10-cv-00638, 2011 WL 3901877, at *2 (D. Conn. Sept. 6, 2011) (citing cases). Rather than amounting to an obscenity, Gatestone's language is expressly required by the FDCPA, *see* 15 U.S.C. § 1692e(11), and "it is unclear how [Gatestone] or any other debt collector could collect a debt in accordance with the FDCPA without informing a debtor that it is a debt collector attempting to collect a debt." *See NCB Mgmt. Servs., Inc.*, 2023 WL 7553051, at *4. The claim therefore fails as a matter of law and Gatestone is entitled to summary judgment.

Rivera also alleges that, in attempting to collect the debt, Gatestone engaged in "coercion." *See, e.g.*, ECF No. 25 at 1 ("GATESTONE & CO have acquired my personal identifying information like name, social and address without prior consent to coerce repayment on unlawful debt through the mail."); ECF No. 81 at 13 ("GATESTONE has committed collection activities under false, deceptive and misleading pretenses because they have attempted to coerce 'money' in interstate commerce on unlawful debt obligation that are not enforceable."). I construe Gatestone's alleged use of "coercion" to fit within the scope of "harassing or abusive" conduct barred by Section 1692d.

In response to the claim that Gatestone coerced payment from Rivera, Gatestone points to Rivera's interrogatory responses, noting that when Gatestone asked Rivera to "[i]dentify any and

16

all documents, recordings or other method of documentation evidencing [his] allegation . . . that Gatestone attempt[ed] to 'coerce' payment of an American Express debt," ECF No. 45-3 at 6, he responded, "Noone [*sic*]. Complete answer." ECF No. 45-4 at 2. Gatestone asserts that this is an "admission," by Rivera, "that he has no basis for his contention that Gatestone tried to coerce payment from him." ECF No. 45-1 at 4. While that conclusion is a bit too sweeping, given the interrogatory's more narrow scope, this response is nevertheless sufficient for Gatestone to demonstrate the absence of evidence suggesting coercion—a demonstration Rivera makes no effort to rebut. Instead, his opposition brief merely doubles down on the non-specific and unsupported allegation that Gatestone engaged in "coercion." *See* ECF No. 49 at 2 ("GATESTONE upon attempting to coerce 'money' in commerce via extortionate means has committed violations and caused me damages . . . ."). But conclusory assertions like these are insufficient to create a dispute of material fact. Accordingly, absent even a modicum of evidence in support of Rivera's 1692d "coercion" claim, the Court grants summary judgment in Gatestone's favor.

### E. 15 U.S.C. § 1692e

Section 1692e prohibits "false, deceptive, or misleading" collection practices. 15 U.S.C. § 1692e. Rivera alleges that Gatestone violated Sections 1692e(2)(a), 1692e(10), 1692e(11), 1692e(12), 1692e(14) and 1692e(16). *See* ECF No. 25 at 2-4. Gatestone argues that Rivera "has f[a]iled to provide any facts or basis for his contention that Gatestone, while attempting to collect debts that it validated, somehow, and in some[ ]way" violated these provisions. ECF No. 45-1 at 9. The Court disagrees insofar as it is able to construe the purported factual basis for these claims.

The claims nevertheless fail, as the record contains no evidence to support them or they are otherwise legally deficient.

First, Rivera alleges that Gatestone has violated Section 1692e(2)(a). That provision bars "the false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Rivera alleges that Gatestone "claims there is an alleged debt owed but the amount is represented in the positive leading me to believe I am receiving a check." ECF No. 25 at 2. In support of his allegation, Rivera cites "EXHIBIT A," *id.*, but the complaint contains no such exhibit. If Rivera is citing Gatestone's debt collection notice, ECF No. 1-1 at 1, or the American Express statements Gatestone sent to Rivera to validate the debt, ECF No. 25 at 12-14, those documents plainly show that money is *owed* and do not support any inference that could lead Rivera to believe he is "receiving a check." *See, e.g.*, ECF No. 1-1 at 1 ("Total amount of the debt now: $1,555.86."). There is no evidence for Rivera's claim under Section 1692e(2)(a).

Second, Rivera alleges that Gatestone violated Section 1692e(10)—which bars the use of "false representation or deceptive means to collect or attempt to collect any debt," 15 U.S.C. § 1692e(10)—because "[t]here is no lawful debt where an obligation to pay is required there for GATESTONE using the mail to send letters that state I can pay money to AMERICAN EXPRESS but in fact it is to GATESTONE." ECF No. 25 at 3. This allegation is difficult to follow. If Rivera is contending—as it appears he is—that Gatestone's communications were deceptive insofar as they indicated that Rivera could submit payment to American Express, rather than Gatestone, such a position is entirely unsupported and is, in fact, wholly refuted by the record. *See* ECF No. 1-1 at 1 (Gatestone's debt collection notice, stating that Rivera should "make [his] check payable to Gatestone & Co").

Rivera also alleges that Gatestone's collection practices were "false, deceptive and misleading" because Gatestone attempted to collect on a debt that American Express had already "discharged for tax purposes," ECF No. 81 at 12, and because Gatestone and another debt collector, "Zwicker & Associates," "have both attempted to coerce the SAME BALANCE on the SAME ACCOUNTS at the SAME TIME." *Id.* Rivera points to no evidence to support these allegations.[4]

---

[4] With respect to Rivera's allegation that American Express discharged his debts for tax purposes, the Court notes that Rivera has attached to his complaint three "payment coupons" for the three accounts at issue. ECF No. 81 at 28-30. The first coupon, pertaining to the account ending in 61000, reflects a minimum payment due of $0.00 and a payment due date of 12/15/22. *Id.* at 28. The second coupon, pertaining to the account ending in 81002, reflects a minimum payment due of $0.00, a new balance of $0.00, and further states, "Payment Not Required." *Id.* at 29. The third coupon, pertaining to the account ending in 32009, reflects a minimum payment due of $0.00 and a payment due date of 12/28/22. *Id.* at 30. To the extent Rivera offers these coupons as proof of a discharged debt, they are unavailing. In construing the evidence, the Court must draw all *reasonable* inferences in Rivera's favor. Concluding that these coupons demonstrate that American Express had "discharged" the debts associated with these accounts—and that it did so for "tax purposes"—would not be a reasonable inference. No reasonable jury could return a verdict in Rivera's favor on the basis of this evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

With respect to Rivera's allegation that Gatestone and Zwicker & Associates were simultaneously collecting on the same debt, the Court could not find—nor does Rivera identify—a federal law that prohibits a creditor from assigning multiple debt collectors to a single debt. Nevertheless, those creditors, in attempting to collect the debt, must comply with the strictures of the FDCPA. In the context of Section 1692e, that means avoiding collection efforts that result in "false or misleading representations." *See* 15 U.S.C. § 1692e. Here, there is no evidence of simultaneous collection efforts, let alone false or misleading ones. On September 17, 2022, Gatestone notified Rivera of a debt associated with an American Express account ending in 02002. ECF No. 1-1 at 1. On October 6, 2022, Rivera demanded that Gatestone validate the debt associated with that account. *Id.* at 2. On October 31, 2022, American Express notified Rivera that the account "ha[d] been transferred to Zwicker & Associates, P.C. for collections." *Id.* at 37. And on November 7, 2022, Gatestone responded to Rivera's debt validation request. *Id.* at 3.

Assuming that Gatestone's response constituted an ongoing collection effort—indeed, that communication expressly states, "this is an attempt to collect a debt, *id.*—the response, standing alone, is not demonstrably false or misleading. There is no evidence in the record to suggest that Gatestone was no longer assigned the account at the time the communication was sent. Nor does the communication state, or even suggest, that Rivera was obligated to pay both Gatestone and Zwicker & Associates. Moreover, nowhere in this record is there evidence that Zwicker attempted to collect the debt associated with this account (whereas the record in *Rivera v. Zwicker & Associates* contains such evidence, *see* 23cv116, ECF No. 1 at 39. that evidence shows only that Zwicker attempted to collect the debt on January 11, 2023—months after Gatestone's collection attempts that appear in this record). As to whether American Express's notification could have misled Rivera into believing there were multiple debts or that multiple debt collectors were due payment, the Court need not address it, as American Express is not a debt collector under the Act. *See* 15 § 1692a(6). Finally, as to the American Express accounts ending in 81002, 32009, 61000, there is no evidence that Zwicker & Associates ever pursued the debts associated with these accounts contemporaneously with Gatestone's efforts.

Third, Rivera alleges that Gatestone violated Section 1692e(11). That provision requires a debt collector "to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). In its initial communication to Rivera, Gatestone stated, "We are trying to collect a debt that you owe to American Express. We will use any information you give us to help collect the debt." ECF No. 1-1 at 1. Rivera argues that this constitutes a violation of the provision because it "is not the exact phrase that is required to be stated under the provision." ECF No. 25 at 4.

A debt collector is not required to quote the language in Section 1692e(11) verbatim. *Emanuel v. American Credit Exchange*, 870 F.2d 805, 808 (2d Cir. 1989) (holding that "there simply is no requirement that" a letter sent by a debt collector "quote verbatim the language of [Section 1692e(11)]"). Nor is Gatestone's language otherwise misleading. As the Court has explained in one of Rivera's other cases, "courts apply the 'least sophisticated consumer' standard when evaluating whether collection-related conduct is misleading under the FDCPA." *Rivera v. NCB Mgmt. Servs., Inc.*, No. 3:23-cv-00221 (MPS), 2025 WL 1707802, at *4 (D. Conn. June 18, 2025). "Under this standard, a collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Id.* This standard will not, however, render a debt collector liable for "unreasonable misinterpretations of collection notices." *Pettaway v. National Recovery Solutions, LLC*, 955 F.3d 299, 304 (2d Cir. 2020). Gatestone's mild deviation from the statutory language is a far cry from misleading or deceptive, and the statement plainly satisfies Section 1692e(11). Accordingly, Rivera's claim fails as a matter of law.

Finally, Rivera alleges that, although Gatestone purchased the debt from American Express "via a FORWARD FLOW AGREEMENT," ECF No. 25 at 3; ECF No. 81 at 13, it nevertheless continued to pursue the debt "in the name of American Express," and thereby: 1) created a "false representation or implication that accounts have been turned over to innocent purchasers for value," violating 15 U.S.C. § 1692e(12); 2) used a "business, company, or organization name other than the true name of the debt collector's business, company, or organization," violating 15 U.S.C. § 1692e(14); and 3) gave "the impression that it is employed by AMERICAN EXPRESS and is collecting on a debt on their behalf when in fact GATESTONE[ ] is a debt collector in business for themselves," violating 15 U.S.C. § 1692e(16)—which bars "the false representation or implication that a debt collector operates or is employed by a consumer reporting agency." ECF No. 25 at 3.

Rivera provides no evidence creating a genuine dispute as to any of these claims. Nor is there any evidence of the "forward flow agreement" upon which these claims are predicated—a point Rivera does not contest. *See* ECF No. 81 at 14 ("Defendant has never produced a bill of sale, forward flow agreement, or any valid chain of title showing Plaintiff specific accounts . . . ."). These claims, instead, appear to rely on an inference that such an agreement must exist because, as Rivera believes, Gatestone must "own" the debt. *See* ECF No. 49 at 1 ("GATESTONE must prove not that there is a debt but that it 'owns' the debt as a holder in due course."). This belief, however, is mistaken—a point the Court addresses in more detail further below—and Rivera's inference is therefore unreasonable. The evidence leaves beyond dispute that Gatestone was collecting a debt on behalf of American Express. Moreover, there is no evidence to suggest that Gatestone gave the false impression that the accounts had been turned over to innocent purchasers

for value, that it used any name other than its own in collecting the debt, or that it was collecting the debt for itself rather than for American Express.

For the reasons stated above, Gatestone is entitled to summary judgment as Rivera's Section 1692e claims.

**F.  15 U.S.C. § 1692f**

Rivera alleges violations of Section 1692f, which bars debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Gatestone points out that, "as the FDCPA's 'catchall provision,' Section 1692f only prohibits conduct that is not specifically barred by the FDCPA's other provisions." ECF No. 45-1 at 10 (internal quotations omitted). It argues that Rivera's "Section 1692f claim is premised on the exact same conduct from which the Section 1692e claims (and his other claims) arise" and that the claim should therefore be dismissed. *Id.* Gatestone does not, however, identify the conduct it believes is duplicative, and the Court will therefore address the claim on the merits.

Rivera's Section 1692f claim arises under subsection (1), which prohibits debt collectors from collecting "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Rivera alleges that Gatestone has "attempt[ed] to collect on a consumer alleged debt without any lawful contract between GATESTONE and [him]," ECF No. 25 at 2, and has failed to prove ownership over the debt, *see* ECF No. 81 at 18 ("Defendant GATESTONE has provided NOTHING over 2 years of litigation that proves it owns the Plaintiff obligation and that Defendant in fact has a right or any authority to demand performance . . . ."). This, according to Rivera, deprives Gatestone of "legal standing," *id.* at 15, and constitutes a violation of Section 1692f(1). ECF No. 25 at 2.

22

Even if there were evidence to support these allegations, they nevertheless fail to give rise to a claim, and Gatestone is therefore entitled to summary judgment. First, Section 1692f(1) does not require contractual privity between a debt collector and a debtor. Nor does any other provision of the FDCPA. Indeed, the existence of a contract is often what differentiates a creditor (who has a contractual relationship with the debtor) from a debt collector (who is often collecting on behalf of the creditor and therefore lacks such a relationship). Second, a debt collector need not "own" the debt or demonstrate ownership of the debt to collect it. The FDCPA defines a "debt collector" as one, in part, who "regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The phrase "collect debts owed . . . another" expressly precludes those debt purchasers who come to own the debt.[5] *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) (holding that, when a company purchases and "collects debts for its own account," this statutory definition is not triggered). The FDCPA could not have required Gatestone to demonstrate ownership of the debt when the Act itself plainly applies to debt collectors who lack ownership.

---

[5] 15 U.S.C. § 1692a(6) reads in relevant part:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

While *Henson* held that a purchaser of debts for its own accounts is not a "debt collector" under the "regularly collects" clause of the provision, the Court declined to address whether such a purchaser would be a debt collector under the "principal purpose" clause. *See Henson*, 582 U.S. at 82 ("[T]he parties briefly allude to another statutory definition of the term 'debt collector'—one that encompasses those engaged 'in any business the principal purpose of which is the collection of any debts.' But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either.") (internal citation omitted). The Second Circuit has cited *Henson* for the broader proposition that owning a debt precludes one from being a debt collector under the FDCPA. *See Costello v. Wells Fargo Bank, NA*, No. 22-1528-cv, 2023 WL 6380061, at *2 (2d Cir. Oct. 2, 2023) ("[A]s the Supreme Court has explained, 'you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector' under the FDCPA.") (citing *Henson*, 582 U.S. at 87).

It follows that Rivera has failed to allege—much less adduce evidence suggesting—that Gatestone collected on any amount that was not authorized by agreement or permitted by law. The Court therefore grants summary judgment to Gatestone as to this claim.

### G.  15 U.S.C. § 1692g

Section 1692g requires debt collectors to provide notice of a debt and allows consumers to dispute the debt within 30-days of receiving notice. *See* 15 U.S.C. §§ 1692g(a)-(b). Moreover:

> If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt . . . is disputed . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. §§ 1692g(b).

It is undisputed that Rivera sought validation of his debts and that Gatestone responded by stating "we are sending copies of statements and any other relevant documentation to serve as validation of debt." ECF No. 46 ¶¶ 2, 3; *see also* ECF No. 25 at 8 (Rivera's letter to Gatestone, demanding that Gatestone "validate th[e] alleged consumer debts"); *id.* at 9-11 (Gatestone's letters in response). The record also contains what appears to be the three "copies of statements" Gatestone sent to Rivera to validate the debts. *See id.* at 12-14. While Gatestone does not directly cite or reference these statements in its Rule 56(a)1 statement, Rivera does not dispute that Gatestone sent bank statements to validate the debt. *See* ECF No. 81 at 14 ("GATESTONE proceeds to acquire copies of Plaintiff coupons/statements from their client and attempts to mislead Plaintiff into believing that these copies are sufficient evidence/validation of 'money' that is owed to GATESTONE when it is not."). Rivera contends, nonetheless, that these statements were not an adequate form of validation and that Gatestone was instead required to produce "a bill of sale,

forward flow agreement, or any valid chain of title." ECF No. 81 at 14. Gatestone, on the other hand, argues that "[s]ending a credit card statement to a consumer . . . satisfies the debt collector's verification requirement." ECF No. 45-1 at 11. The Court agrees with Gatestone.

Section 1692g does not state *how* a debt must be validated. Courts in this Circuit have nevertheless held that because 1692g's verification requirement is intended only "to eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," the verification requirement is satisfied when "the debt collector obtain[s] a written statement that 'the amount being demanded is what the creditor is claiming is owed.'" *Stonehart v. Rosenthal*, No. 01-cv-651, 2001 WL 910771, at *6 (S.D.N.Y. Aug. 13, 2001) (ellipses in original) (citing *Chaudhry v. Gallerizzo,* 174 F.3d 394, 406 (4th Cir. 1998)). "[T]he debt collector is not required to keep detailed files of the alleged debt." *Id.* The American Express bank statements in the record each contain Rivera's name, home address, the terminal digits of the account number associated with the debt, and the amount of the debt. *See* ECF No. 25 at 12-14. This is plainly sufficient to achieve the statutory purpose of Section 1692g's verification requirement. *See also Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 502 (E.D.N.Y. 2015) ("Th[e] statements . . . clearly contained the Plaintiff's name and home address, and included a charge-off in the amount of $918.78—the amount the Defendants claim is owed. District courts within this Circuit have repeatedly recognized such evidence as sufficient to satisfy the verification requirement under the FDCPA.").

Similar to his other claims, Rivera's assumption that Gatestone must own the debt to have authority to collect the debt appears to inform his misapprehension as to what constitutes proper debt validation under the FDCPA. This assumption, as previously discussed, is incorrect, and

Rivera's citation of the UCC and Connecticut law does not alter that conclusion. *See* ECF No. 81 at 14 ("Defendant has never produced a bill of sale, forward flow agreement, or any valid chain of title showing Plaintiff specific accounts establishing that it acquired any right to collect/coerce on Plaintiffs accounts as well under UCC 3-203 and 3-302 as also under the beautiful State Of Connecticut's own adopted version of the UCC per UCC 42a-3-302 and 42a-3-203."). Neither the UCC—a model code that does not carry the force of law—nor state law inform a debt collector's obligations under the federal FDCPA statute.[6]

Because the evidence in the record leaves beyond genuine dispute that Gatestone satisfactorily validated the debt, it is entitled to summary judgment as to the Section 1692g claim.

### H.  15 U.S.C. § 1692j

Finally, Rivera alleges that Gatestone violated Section 1692j. That provision states, in pertinent part:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

---

[6] On the other hand, the FDCPA does not preempt a debt collector's obligations under state law unless those obligations are inconsistent with the FDCPA's provisions. *See* 15 U.S.C. § 1692n ("This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."). To the extent state law provides greater validation requirements, the FDCPA would appear to permit such claims. *See id.* ("[A] State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter."). Here, however, because the Court concludes that Gatestone is entitled to summary judgment as to Rivera's federal claims, the Court declines to exercise supplemental jurisdiction over any such state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

15 U.S.C. § 1692j(a). Rivera alleges Gatestone violated this provision by "furnish[ing] a form . . .
that stated I owe a debt using AMERICAN EXPRESS as a facade to coerce repayment when in
fact there is no lawful debt owed nor an obligation by contract where a wet signature occurred
between I and GATESTONE." ECF No. 25 at 3. The claim, as alleged, appears to have things
backwards. Congress passed Section 1692j to address a practice known as "flat rating":

> A 'flat-rater' is one who sells to creditors a set of dunning letters bearing the
> letterhead of the flat-rater's collection agency and exhorting the debtor to pay the
> creditor at once. The creditor sends these letters to his debtors, giving the
> impression that a third party debt collector is collecting the debt. In fact, however,
> the flat-rater is not in the business of debt collection, but merely sells dunning
> letters. This bill prohibits the practice of flat-rating because of its inherently
> deceptive nature.

*Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 256 (S.D.N.Y. 1998) (quoting S. Rep.
No. 95-382 (1977)). Section 1692j is inapplicable to the circumstances Rivera appears to allege—
i.e., where a debt collector invokes the name of a creditor but is in fact collecting the debt on its
own behalf.[7]

Assuming, nevertheless, that Rivera's allegation pleads facts that are apposite to Section
1692j—i.e., that Gatestone issued American Express a dunning letter to give Rivera the false
impression that Gatestone was collecting the debt—there is no evidence to suggest that Gatestone
provided American Express with dunning letters. Nor does Gatestone's debt collection notice, ECF
No. 1-1 at 1, bear any indicia of being a dunning letter; the letter does not "exhort" Rivera to pay
American Express but rather directs Rivera to "make [his] check payable to Gatestone & Co." *Id.*
There is no dispute of material fact as to this claim. As far as the record is concerned, Gatestone

---

[7] Those circumstances would instead constitute a violation of Section 1692e—a claim the Court has already
addressed.

did not engage in "flat rating." Accordingly, it is entitled to summary judgment as to Rivera's Section 1692j claim.

## IV.    CONCLUSION

Gatestone's motion for summary judgment (ECF No. 67) is GRANTED. Rivera's claims under the FDCPA—as well as his other federal claims—are DISMISSED. To the extent Rivera brings state law claims against Gatestone, *see, e.g.*, ECF No. 81 at 18 (alleging that Gatestone "participated in unjust enrichment"), the Court declines to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(c)(3) and DISMISSES them without prejudice to refiling in state court. Rivera's motion for judgment on the pleadings against Gatestone (ECF No. 88) is DENIED as moot. The Clerk is directed to terminate Gatestone as a defendant in this action.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
        March 10, 2026