**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| WILFRED RIVERA, JR.,<br>　　　*Plaintiff*,<br><br>v.<br><br>GATESTONE & CO.<br>and AMERICAN EXPRESS CO.<br>　　　*Defendants*. | No. 3:23-cv-00035-MPS |

**<u>RULING ON MOTION TO DISMISS</u>**

**I.      Introduction**

Plaintiff Wilfred Rivera brings this *pro se* action against Defendant American Express National Bank[1] ("American Express") under various federal statutes,[2] alleging that it provided inaccurate information, tried to collect on debts it had transferred, and then also allowed third parties to seek to collect the debt. *See generally* ECF No. 81.  American Express seeks to dismiss these claims. For the reasons that follow, the Court GRANTS its motion to dismiss with prejudice. Accordingly, Plaintiff's motion for default entry (ECF No. 87) and motion for default judgement (ECF No. 89) are DENIED as moot.

**II.      Factual and Procedural History**

---

[1] Plaintiff brings this action against "America Express Co" in his complaint. This ruling will use its correct title "American Express National Bank."

[2] Rivera invokes many different statutes, regulations, and the Uniform Commercial Code ("U.C.C.") throughout his complaint. As best can be deduced from the complaint, the Court will discuss the controlling statutes pertaining to his allegations. The Court notes that violations of the U.C.C. cannot serve as the basis for a private lawsuit, as the U.C.C. is a "model code"—a set of provisions proposed by academics and legal professionals—and not a source of law.

Rivera's complaint, ECF No. 81, provides few facts explaining how he has been harmed by the actions of American Express. He does not describe the transactions or information that American Express allegedly misreported; he provides limited dates of his interactions with American Express; and he does not provide any facts linking actions by American Express to harm he suffered. Instead, his complaint makes broad accusations that American Express is violating a series of laws by the manner in which it sought to collect a debt. Nevertheless, because *pro se* litigants in this Circuit are entitled to "special solitude," *see Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), the Court has done its best to glean the following relevant facts from Rivera's complaint and exhibits and accepts them as true for the purposes of this ruling.

**A.  Facts**

American Express "entered into a consumer credit transaction" with Rivera and issued him a credit card. ECF No. 81 at 3. American Express received "'goods' on [Rivera's] behalf." *Id*. American Express "conduct[ed] a finance charge in exchange for credits they received a cash advance on [his] behalf and misl[e]d [him] to believe that the credit [he] was given was a loan of some sort…that required Federal Notes as 're'-payment.'" *Id.* American Express "claimed there is an alleged debt…to which they suffered a loss and have provided alleged statements and contract agreements of that alleged debt…. American Express has in fact only len[t] credit and has attempted to charge interest and recoup payment on a FINANCE charged amount." *Id.* at Exhibit B.

"American Express has misl[e]d [him] to believe that it conducted a lawful contract misleading [him] to believe that the credits extended was a form of consideration when in reality American Express has gained advances on [his] behalf and not given [him] any consideration nor evidence of the exchange," "which invalidated any alleged debt" under the U.C.C. *Id.* at 3.

Because of American Express's "willful failure to provide the necessary evidence of a LAWFUL DEBT in the reasonable period of time provided (14 days) [Rivera] now consider[s] the debt being fully discharged…." *Id.* at Exhibit B.

American Express also violated the Truth in Lending Act by failing to disclose to Rivera "that a finance charge would result in a cash advance." *Id.* at 4. American Express "fail[ed] to properly and conspicuously inform [him] of [his] right to credit" and "failed to make clear and conspicuous to [him] ALL disclosures of financial agreements including securities agreements and true credit transaction[s]…." *Id.* American Express "caused [Rivera] to electronically sign…an alleged lawful debited credit agreement that **did not** fully inform [him] of all rights, terms, transactions…causing [Rivera] to unknowingly waive certain rights." *Id.* American Express also misled him "into unknowingly granting a security interest without informing [him] of the true nature of the credit transaction which is a violation under TILA." *Id.* at Exhibit D.

American Express has furnished Rivera's nonpublic personal information, including transactional information, to non-affiliated third parties—apparently including credit reporting agencies. *Id.* at 5-6. It has done so "without consent or permissible purpose or the opportunity to opt-out…." *Id.* at 6. American Express "has untruthfully shut down [his] accounts" and charged off debts he owes but continues to attempt to coerce repayment by furnishing inaccurate information, apparently to CRAs. *Id.* at 7. American Express "did not in fact loan [him] any 'money' in commerce from their own books." *Id.* at 11. Yet, "for no lawful reason shut[] down and surcharge[d] the credit accounts as 'tax benefit' while continuing to attempt to keep the obligation performing after 'write-off' via the furnishing of inaccurate and incomplete transactional information." *Id.* This gave the "illusion that he defaulted making Plaintiff now a

3

disgracefully risky individual who is 'unworthy' of exercising **HIS OWN UNALIENABLE GRANTED 'RIGHT'** to extend credit…." *Id.*

American Express "fraudulently sold the discharged account as a collectible debt to a third[-]party Debt Collector." *Id.* at Exhibit B. After this sale, American Express is now "a mere servicer of the obligations with no actual rights to demand performance for itself when the obligation belongs to another entity." *Id.* at 11. American Express violated C.G.S. § 36(a)-806(b), "which strictly prohibits a 'creditor' to hire or retain any person or entity as a consumer collection agency if the creditor has actual knowledge that the person or entity is not licensed by the Banking Commissioner." *Id.* at 13.

Rivera "has lost his ability to the pursuit of happiness…and lost his ability to exercise his unalienable right to extend credit." *Id.* at 25. Rivera seeks $20,000,000 in "compensatory/punitive damages for discrimination in denying [Rivera his] granted right to credit which is an unalienable right causing [him] to lose [his] pursuit of happiness protected under the Constitution." *Id.*

### B. Procedural Background

This case was filed over three years ago. *See* ECF No. 1. Since that time, the Court has granted Rivera leave to amend his complaint on three occasions. *See* ECF Nos. 25, 60, 81. When Rivera filed his second amended complaint, he joined Defendant American Express. ECF No. 60. After appearing, American Express filed a motion to dismiss. ECF No. 68. The Court gave Rivera the opportunity to "plead additional facts to support [his] complaint" in light of American Express's motion. ECF No. 80. Rivera subsequently filed his third amended complaint—the operative complaint. ECF No. 81. The Court denied American Express's first motion to dismiss as

4

moot. ECF No. 83. American Express then refiled its motion to dismiss. ECF No.84. Rivera did not file a response in opposition to the motion.

Despite his silence on the pending motion to dismiss, Rivera subsequently filed a motion for default entry (ECF No. 87) and a motion for default judgment (ECF No. 89) because American Express "failed to join [the] issue," apparently by not answering to his amended complaint. ECF No. 87 at 1; ECF No. 89 at 4.[3]

## III.    Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker*

---

[3] On July 7, Rivera filed a "notice" "to assist the Court," apparently to adjudicate his motion for default judgment. Because this document was filed over five months after American Express's motion to dismiss, the Court will not consider it. *See* ECF No. 85 (informing self-represented litigant of Local Rule requiring filing of opposition within 21 days of filing of motion.)

*v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks and citations omitted).

## IV.    Discussion

American Express argues that Rivera's claims are "meritless and not based in any actual relevant fact or applicable law." ECF No. 84 at 4. It has construed Rivera's complaint as bringing claims under multiple federal statutes, including "the TILA, GLBA, FCRA, FDCPA or ECOA." *Id.* at 7. American Express argues that these claims do not satisfy "federal pleading standards or show that Plaintiff is entitled to any relief whatsoever from American Express." *Id.* at 8. The Court agrees.

### A.  Motion to Dismiss Under Rule 12(b)(6)

American Express moves to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). The Court will consider each of the alleged violations in turn.[4]

#### 1.   Truth in Lending Act

First, Rivera alleges that American Express "failed in their TRUTH IN LENDING requirements under 15 USC 1639." ECF No. 81 at 4. Rivera suggests that American Express violated TILA by "misleading [him] into believing that the credits w[ere] coming from their books in the form of a loan of sort that required 're'-payment." *Id*. Because the credit did not come from American Express's "books," Rivera contends, it does not impose a repayment obligation, and American Express violated TILA by misleading him on the terms. The Court does not agree.

The Truth in Lending Act ("TILA") "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980). TILA aims to provide "a meaningful disclosure of

---

[4] The Court incorporates by reference ECF No. 91, granting Gatestone's motion for summary judgment, and it will not address allegations against Gatestone further. ECF No. 81 at 13-17.

6

credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Maddox v. Cap. One Auto Fin. Inc.*, No. 22-CV-7215-RER, 2024 WL 4515922, at *2 (E.D.N.Y. 2024); 15 U.S.C. § 1601(a).

The section Rivera cites, 15 U.S.C. § 1639, pertains to mortgages; but Rivera does not allege any facts regarding a mortgage. Rivera does not allege any specific facts to support his TILA violation claims. Instead, he seems to rely on the "vapor money theory," a theory based on the United States' decision to discard the gold standard in exchange for credit. Under the vapor money theory, "a loan imposes no repayment obligation if the indebtedness was funded with credit as opposed to hard currency." *Nunez v. Credit Acceptance Corporation*, 2025 WL 2443438 at *3 (D. Conn. 2025) (collecting cases). Courts nationwide have rejected this theory and found it to be frivolous. *Id.*

Rivera provides no other legal or factual basis to establish that American Express "failed to properly and conspicuously inform [him] of [his] rights to credit…." ECF No. 81 at 4. Because Rivera does not allege any facts regarding TILA that state a claim on their face, these claims must be dismissed with prejudice.

### 2. Gramm-Leach-Bliley Act

Next, Rivera alleges that American Express "failed in its grave duty under 15 USC 6801(a)(3) to protect [his] non[-]public consumer information." ECF No. 81 at 5. While Rivera spends time discussing the Gramm-Leach-Bliley Act ("GLBA"), he also states "Plaintiff is merely referencing the GLBA to prove his point, not to bring action under this Act." *Id.* at 5-6. Regardless of Rivera's intent with these claims, the GLBA does not provide a private right of action, as private citizens are not listed among authorized enforcers of the act. Indeed, "[e]very case to have

addressed the issue has held that the GLBA does not provide for a private right of action." *Farley v. Williams*, No. 02-cv-0667C, 2005 WL 3579060, at *3 (W.D.N.Y. 2005) (collecting cases). Because a private right of action does not exist under the GLBA, any claims under 15 U.S.C. §§ 6801, 6802 are dismissed with prejudice.

### 3. Fair Credit Reporting Act

Rivera argues that "AMERICAN EXPRESS is also liable under the FCRA as per 15 USC 1681s-2 & 2(b)," because they "leveraged 'elaborate mechanism[s]' to voluntarily furnish inaccurate transactional information." ECF No. 81 at 8. Rivera claims that American Express's representing that he owed a debt "is in fact inaccurate and willful because it gives the impression of a balance owed on a performing obligation when in reality that obligation has been discharged/closed for a tax benefit and the balance has been already satisfied." *Id.* The only discernible proof that Rivera includes is three bank statements from accounts ending in 61000, 81002, and 32009. *Id.* at Exhibit A. He uses these statements to show a zero balance on these accounts in December 2022, so Rivera's "'obligations' despite all else are beyond satisfied." *Id.* at 7. These allegations fail to state a claim under the FCRA.

The FCRA, 15 U.S.C. § 1681 et seq., regulates consumer credit reporting agencies to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumer credit information. "As part of this regulatory scheme, the [FCRA] imposes several duties on those who furnish information to consumer reporting agencies," including financial institutions. *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681s-2). For example, financial institutions may not furnish consumer-related information to credit reporting agencies that they know to be inaccurate; and if a financial institution receives notice of a credit dispute from a consumer reporting agency, it must investigate. 15 U.S.C. § 1681s–2(a), (b). *See Longman*,

702 F.3d at 150 ("Among these are duties to refrain from knowingly reporting inaccurate information, see § 1681s–2(a)(1), and to correct any information they later discover to be inaccurate, see § 1681s–2(a)(2)."). "[T]here is no private cause of action for violations of [Section] 1681s–2(a)." *Longman*, 702 F.3d at 151 (collecting cases). The statute expressly provides that Section 1681s–2(a) "shall be enforced exclusively…by the Federal agencies and officials and the State officials identified in section 1681s of this title." 15 U.S.C. § 1681s–2(d). To the extent Rivera alleges violations of subsection (a) of section 1681s–2, the Complaint fails to state a claim.

Nor does he state a claim under subsection (b) of section 1681s-2. Rivera does not put forth any facts to show the supposed inaccurate reports or any credit disputes he filed with a credit reporting agency. Instead, Rivera, again, relies on the vapor money theory to prove he did not have a debt. If there is no debt, he claims, the information reported by American Express is inaccurate. As discussed above, the vapor money theory is frivolous. Rivera's FCRA claim against American Express is dismissed with prejudice.

### 4. Fair Debt Collection Practices Act

Rivera alleges that American Express "has transferred the obligations into an SPV…where now Defendant is but a mere servicer of the obligations with no actual rights to demand performance for itself when the obligation belongs to another entity." ECF No. 81 at 11. American Express "placed those alleged debts in DEFAULT and has DISCHARGED/WRITTEN OFF the amount and sold the account information to third[-]party debt collectors claiming [he] the consumer owe[s] an alleged debt to AMERICAN EXPRESS to which they suffered a financial loss." *Id.* at Exhibit B.

The FDCPA prohibits deceptive and misleading practices by "debt collectors." 15 U.S.C. § 1692e. The statute specifically defines debt collectors as those engaged in "any

9

business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692e. The FDCPA primarily limits its reach to those collecting the debts of another and generally does not restrict the activities of creditors seeking to collect their own debts. *Maguire v. Citicorp Retail Services, Inc*., 147 F.3d 232, 235 (2d Cir. 1998).

Because American Express is a creditor, rather than a debt collector, the only potentially applicable provision that might enable Rivera to sue it under the FDCPA is 15 U.S.C. § 1692a(6), which subjects a creditor to the FDCPA if "in the process of collecting [its] own debts, [it] uses any name other than [its] own which would indicate a third person is collecting or attempting to collect such debts." *Vincent v. The Money Store*, 736 F.3d 88, 90-91 (2nd Cir. 2013). Rivera suggests that American Express transferred the account "to said company [Zwicker & Associates] but attempt[ed] to collect on it for [it]self…." *See* ECF No. 81 at Exhibit B. Rivera does not put forth any factual allegations to show that American Express attempted deceitfully to collect a debt under any other name or to collect a debt it allegedly sold. When contacting American Express via letters on May 5, 2023, June 7, 2023, and July 19, 2023, Rivera states that American Express sold the debt he accrued. *Id*. Rivera does not allege any facts showing that American Express violated section 1692a(6).

Accordingly, the FDCPA claims against American Express are dismissed with prejudice.

### 5. Equal Credit Opportunity Act

Finally, Rivera "[s]eek[s] from AMERICAN EXPRESS Compensatory/Punitive Damages For Discrimination In Denying Me My Granted Right To Credit Which Is An Unalienable Right." ECF No. 81 at 25. The ECOA makes it illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction…on the basis of race, color, religion,

national origin, sex or marital status, or age, because the applicant derives all or part of her income from a public assistance program, or because the applicant in good faith exercised her rights under the statute." 15 U.S.C. § 1691(a)(1). Rivera does not allege that he was a member of any protected class under the ECOA or any specific facts to support his claim of "willful banking **misconduct.**" ECF No. 81 at 25. Rivera's claim under the ECOA is dismissed with prejudice.

## V.      Conclusion

American Express's motion to dismiss (ECF No. 84) is GRANTED. Rivera's motions for default entry (ECF No. 87) and default judgement (ECF No. 89) are DENIED as moot. The Court has granted Rivera leave to amend his complaint multiple times and finds that any further amendments would be futile. This case is dismissed with prejudice.

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

     July 9, 2026